# NED JAMES v. STATE.

No. A-7299. Opinion Filed June 14, 1930.
(289 Pac. 780.)

G. W. Goad and J. W. Miller, for plaintiff in error.

J. Berry King, Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter referred to as the defendant, was convicted of embezzlement, and his punishment fixed at imprisonment in the penitentiary for two years.   From the judgment, the defendant has appealed.

An abstract of the testimony of the state, in substance, is as follows:   Willie Walasky owned a farm in Delaware county and rented the same to Ned James and Pete James; they were living in the house owned by Walasky; Walasky had some cattle which was left on the place, and some other property; among the cattle was a black cow; shortly after the defendant moved on the place,

the cow found a calf; Walasky was asked and answered the following questions:

"Q. Who did you let milk her (referring to the black cow)? A. I did not let anyone have her.

"Q. Mr. Walasky, do you know whether or not Pete and Ned James milked the cow? A. Yes."

In substance, he stated it was the month of April or May he learned they were milking the cow—

"I never saw her any more after June; I next saw the cow on Grand river at John Henry Raper's place; this was in the month of August; the black cow was marked swallow fork in right ear and smooth crop in left; when Ned and Pete James moved to the place the cow was around the place; I missed the cow in July; I asked some white man to take me to John Henry Raper's to see if they could trace the cow; I did not entrust any of my cattle with Ned and Pete James, no, sir, they were milking one of the other cows but I had not agreed to anything with them."

Considerable testimony is taken up in the record by the witness with reference to missing other cattle and hogs there at his place, which was objected to by the defendant, the objection sustained, and the court ordered the testimony stricken. Walasky was asked and answered the following questions:

"Q. Who was taking care of this stock while you were down on Saline Creek? A. I did not leave anyone to take care of the live stock while I was gone. As Pete and his family were staying there I allowed they would look after them.

"Q. Did you leave the stock there where you were living? A. Yes sir, there at my home."

On cross-examination the witness was asked the following question and gave the following answer:

"Q. Did you turn this stock over to Pete James and Ned James and put them in their possession? A. No sir, I did not."

There were quite a bunch of the James family; Pete and his wife Jennie, Ned and John and some small children; Jennie James milked the cow. "There was no agreement between Ned James and me with referenc to letting Jennie milk the cow."

"Q. You do not know that Ned James ever assumed any control of them from the time they moved there until the cow was gone? A. No, sir.

"Q. I believe you stated when asked the question, who was taking care of this stuff, 'I did not leave it with anyone,' Is that correct? A. Yes, I did.

"Q. I believe when the question was asked you, 'Did you entrust any other cows to Ned James' you answered, 'No.' A. That is correct. I did not entrust my cattle to him.

"Q. You did not arrange with him at all? A. All the arrangement we had, he was to farm the field."

On redirect examination:

"Q. Who was to feed your cow and stock while you were gone? A. No one, I just left the stock there when I went away.

"Q. Who did feed your stock before you went away? A. Myself."

This is, in substance, the testimony of the prosecuting witness, the owner of the cow and calf alleged to have been embezzled. There is other testimony with reference to the cow being at the home place of the prosecuting witness, where the defendant Ned James and the other James family had been living. The cow and calf being taken from the place and found at the Raper place.

The defendant, relying upon the question that the state did not offer sufficient testimony to establish the crime of embezzlement against the defendant, did not offer any evidence.

The defendant has assigned seven errors alleged to have been committed by the trial court. The first, second, third, and fifth errors will be considered together, as they relate to the question of the sufficiency of the evidence against the defendant to sustain a conviction for embezzlement. The first assignment being, the verdict is not sustained by sufficient evidence; second, the verdict is contrary to law; third, the verdict is contrary to both the law and the evidence; and, fifth, the court erred in refusing to sustain the demurrer of the plaintiff in error to the evidence offered on the part of the state, at the close of the evidence on the part of the state.

Section 2121, C. O. S. 1921, defines embezzlement as follows:

"Embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted."

It is clearly shown by the testimony in this this case that the prosecuting witness rented his place to Pete and Ned James for the purpose of cultivating the farm land; that at the time they moved on the place the prosecuting witness had some live stock consisting of cows, hogs, and some chickens; that the prosecuting witness for a time after the defendant and the James family moved on the place looked after his own stock. He testifies the only arrangement he had with the defendant in this case was to cultivate the land, and that he did not entrust his stock to this defendant. There is some testimony showing that Jennie James, the wife of Pete James, milked the cow some time during the summer, but there

is no testimony showing the defendant in this case in any way whatever had anything to do with the milking of the cow or exercised any possession over her. The evidence fails to establish a relation between this defendant and owner of the cow whereby this defendant exercised any possession or control over the property alleged to have been embezzled.

Under our criminal procedure, a new trial should be granted when the verdict is contrary to the law or the evidence. The responsibility of determining whether or not there has been adduced before the jury a sufficient amount of legal and competent evidence to render it safe to allow the verdict to stand is imposed first, upon the trial court, and second, on appeal upon this court. The performance of this duty on the part of the court is the exercise of legal discretion and judgment as to the sufficiency of the evidence to overcome the legal presumption of innocence to which every one is entitled who is charged with a crime and placed on trial. Matheny v. State, 37 Okla. Cr. 369, 259 Pac. 175.

On a consideration of the evidence, we are of the opinion that there is no competent or legal evidence to warrant the trial court in submitting the case to the jury upon a charge of embezzlement.

The judgment is reversed.

EDWARDS, P. J., and CHAPPELL, J., concur.